Good morning, Your Honor. Robert Zeman on behalf of Appellant Plaintiff Julia Zeman. I appreciate the Court accommodating me today, allowing me to sit. Of course. And I also am excited to be here today to listen and to respond to any concerns that you, this panel may have in granting Ms. Zeman's appeal. The panel has indicated that it would like us to discuss today the Coleman v. Quaker Outs case. And in that case, the Ninth Circuit said that there's basically three ways to give defendant fair notice of plaintiff's theories. One, it can be in the four corners of the complaint. This is basically where both the defendant and the District Court stopped the analysis of Coleman. But the rule in the Ninth Circuit enunciated in Coleman went further than that. They didn't just say that it had to be in the complaint. They also said that it could be in attachments to the complaint. And that was decided in Palmer at 794 Fed 2nd, 534. And that was cited in the footnote 8 of Coleman. And then the third way that the Court in Coleman said that plaintiff could put defendant on notice is by making known, quote, during discovery, her intention to pursue recovery on the disparate or other related theory, impact theory, omitted from their complaint. So, and this is exactly what plaintiff did here in this instance. So, you're relying on that third prong of Coleman as the basis. Yes, Your Honor. And the notice, as I understand it, was given in March, and that was how many months before the close of discovery? It was May 27th, actually, Your Honor, 2014. Oh, May, I'm sorry. It was, we served upon Defendant USC supplemental responses to Defendant USC's interrogatory number four. And discovery at that point had been ongoing for what period of time? I don't remember when the decision was had, Your Honor, on the motion to dismiss on the plaintiff's second thing, but it must have been going for maybe nine months, something like that, maybe eight months by that time. About how many depositions had you taken at that point? I had not taken any yet as of that date. I had quite a few medical problems at the time that prevented me from doing that. But it was, we did do a lot of document exchange. Defense counsel served over 18, ended up being about 1,900 pages of documents in this matter that I had to go through. And I am a solo practitioner, so it did take me a while to get through those documents. And what was the, we got the May 27th date, what was the discovery cutoff date? Discovery cutoff date was, Your Honor, September 1, 2014. So that later that same year? Yes. So it would be about over three months since the responses. And also the law in motion wasn't cut off until September 29, 2014. And in the supplemental responses, the plaintiff clearly and unambiguously put defendant on notice about this, her claim, additional claim, theory under 42 CFR 413.65. And I quote in the first sentence of the supplemental response, defendants claim that it is allowed to charge Medicare patients facilities fees is false because the client, because the clinic in question does not meet the requirements found at 42 CFR 413.65 to be a provider-based outpatient department. Let me ask you this hypothetically. Let's say you put your opponent on notice in this informal fashion that, you know, your defendant is liable to you for this reason. It's not on pleading. It's just on notice. And I don't think it's a viable claim. What am I supposed to do? Well, Your Honor, in that instance, I would say that you could include it. What I've done in the past when I was a defense attorney was I would bring it up. I'd bring that part of it up in the summary judgment motion, because as most defense counsel knows. But I don't want to have to spend the time and money. I shouldn't have to spend the time and money adjudicating a claim that I don't think has any legal substance to it. I mean, the way the federal rules are constructed is I'm entitled to have that question resolved initially, the 12B motion. Right, Your Honor. And I would say I think the situation here is slightly different than that, because I guess I differ with the idea that the supplemental interrogatory responses are informal. They're actually in some ways more formal than the complaint. I don't think the claim has any merit. And so how do I test it? Well, like I said, you can do what they did here is you can wait and file a motion for summary judgment. And then you could ask them, instead of saying it's not, defense counsel's position isn't that they didn't get a chance to argue this or to bring this point up. They're saying that they weren't on fair notice, that they were surprised by this. That's the issue I have, is that there's no surprise here. I put them on notice. If you're quibbling about the actual theory that it's not viable, it's not, then they could bring it. And in fact, they basically did bring that up in their moving papers. They said, Your Honor, even if it is in here, it's not a viable theory. The problem, though, if you go down this route, is you're fashioning a whole set of informal procedures and assumptions that are not contained in the federal rules of civil procedure, which is a body of rules that we all know and we can all deal with. I don't see that, Your Honor, because the federal rules are sort of just the opposite. Every defense attorney has taken a deposition of the plaintiff and found all kinds of evidence that they never, you know, that they had a lot more evidence than they could. Mr. Zeman, did you consider asking the district court for leave to amend your complaint in May when you provided notice to the other side? And if not, why didn't you do that? Yes, I think, Your Honor, I did, I did think of that. But I knew that I had first and foremost an obligation under the federal rules of civil procedure, I think it's 26E, to supplement my responses. Right. And you did that. And they were verified. I'm really asking the same question that I think Judge Parker raised with you, and that is that the federal rules of civil procedure really don't contemplate this sort of amendment of the pleadings without amending the pleadings. I mean, the whole purpose of the pleading is to formally put the party and the court on notice of what the issues are that the court has to resolve. So why didn't you, at the same time that you supplemented your response to interrogatory number four, ask for leave to amend your complaint while there was still time during the discovery period to do so? Well, because, Your Honor, there's a few reasons. One is that Coleman says, if it were true that you cannot go to expand your complaint by written discovery, then why did Coleman, why did this court say that in the first place? I mean, they didn't stop at just element one, that it has to be in the four corners. It said, or two, it can be in written discovery like we did here. And, in fact, in the dissent, Judge Fletcher said there that she said that even if, under the facts of the case in Coleman, she would have found that the defendant was on fair notice of this. And under Rule 8 of the Federal Rules of Civil Procedure, you can even go back and you can actually try and completely try a case before judgment or you can even go back and amend your complaint at that time. So the Rules of Civil Procedure are not formalistic. That's exactly what they were trying to get away from when they enacted the new... Would you concede that a judge in those circumstances would have clear authority to say, well, I'm not going to permit that amendment, it was too late, it was unfair, et cetera, et cetera? Right, and let's deal with that. I agree with you, Your Honor, that yes, I think the judge does have that discretion, but also I think here is that the judge didn't make those kind of findings. He just kind of found that it would be prejudicial without explanation to defend it. And my question is, how was it prejudicial? There's never been anything offered by USC to show any type of prejudice. Mr. Zima, let me ask you, I believe your position is that the issue was raised on summary judgment and both parties had an opportunity to address it, although the district court didn't reach it. That's correct, Your Honor. Can we look at that issue as a result of the fact that it was fully briefed before the district court and consider the merits as to whether or not USC is or is not provider based? Yes, Your Honor, I do, although I think it would be better to have it go back and... But isn't it a pure legal question at this point? Assuming that we decide that the issue is adequately addressed in the respective positions of the parties, can't we make a ruling, even though the district court didn't do it, as an alternative to the grounds on which the district court ruled? Yes, because you review De Novo. Yes, I do believe I can see that the court does have that power. Do you want to save some time for rebuttal? Yes, I do. You've got about two and a half minutes left. Thank you, Your Honor. Okay, let's hear from him. May it please the Court, Mark Cartman on behalf of Appellee University of Southern California. Before I just get to Coleman, I mean, generally speaking, Mr. Zima concedes that the general and it's a pretty simple rule that you can't raise a claim for the first time on summary judgment unless it's part of the operative pleading. Let's assume, though, that you were on notice as of May that the claim existed. Right. And let me ask you the same question that I asked Mr. Ziman. If both parties brief the issue, even though the district court didn't reach it, on De Novo review, don't we have the authority to decide that question? Absolutely. And I think we argued, right, that on the record before it, this court could rule as an alternative depending on what it wanted to do with Coleman, could just rule on the summary judgment issue as to the provider-based status. But I do think, Your Honors, that this Coleman decision presents an interesting issue because, you know, in law school we learned about dicta. And obviously you can't just overrule another panel, but this struck me as a classic example of dicta in some ways. The problem, Your Honor, is the sentence starts off, we hold. This is our holding. This is our holding. So let me move off the dicta argument as to why for two reasons I don't think Coleman really is controlling under the facts of this case. The first is that Coleman is a Rule 8 case and it's not an FCA case. And I think some of the concerns expressed by Justice, Judge Parker, are particularly different and more emphasized in an FCA case for two reasons. One, Rule 9b supplements Rule 8 and requires particularity as to fraud. And I think it's generally recognized that the whole purpose of Rule 9 is to prevent claims going forward, especially in the FCA context, without a particularized showing and allowing the plaintiff to then discover, as occurred in this case, fraud based on discovery. I think one circ at one point said the whole purpose of Rule 9 is to eliminate fraud cases based on evidence determined through discovery. But isn't that exactly why this is not the case to go the Coleman route? Isn't that exactly why this is the case to go to the merits? Because there's texture and context here about – and extra layers of complexity about who really was prejudiced and who really was on notice and the degree of particularity required for pleading in this particular kind of case for which the trial court would have a lot of deference, right? That's true. But we could cut to the chase. You could cut to the chase. And look at the merits. You could. You could avoid a difficult issue. But you could also reaffirm as precedent for other parties, especially in fraud cases, that you can – Well, we could. Go ahead. I'm sorry. I didn't mean to interrupt you. No, I interrupted you. Please. Okay. Affirm that it's a simple rule, especially in FCA cases, because there's statutory requirements with respect to notifying the government. It's just not a credible position that the government is supposed to monitor discovery and informal communications to determine whether a relator has suddenly come up with a new theory of fraud in terms of its decision. What you're really asking us to do is to narrow the application of Coleman to Rule 8 cases. Right. And I mean, look, the other problem with Coleman is – and this I'm sure the panel doesn't want to deal with – is what – You don't have enough time to really go through all the issues raised by Coleman. Well, I don't. But one of them is, you know, what notice is required. But don't you kind of swing – I know it's a baseball week, but you seem to kind of swing in here for the bleachers. And I'm just wondering why we aren't doing this the easy way. And I don't know how else to say that. Maybe a ground rule double will work. Well, for us the easy way is to say you're not allowed to – I mean, respectfully, I think for us the easy way to avoid getting to the merits of the Senate Judgment Motion, which you're free to do, is to also say, look, it's a simple rule, especially with 9b supplementing it. Okay, but I've given – That Coleman doesn't apply in 9b situations. I disagree with you. Okay. So can you just take – pretend I disagree with you. And can we talk about the merits for just a minute here? Sure. Why do you win on the merits? Okay. We win on the merits because there's really no disputed facts with respect to the provider-based status in terms of the actual merits of a false claim scenario based on those. You've got a complicated regulation that were, I believe, three points that were made by Relator with respect to alleged confusion and public awareness. We briefed the fact that we made every effort to notify the public about the change in the hospital-based clinic. Confusion on the behalf of the public strikes me as not a basis for either concluding that the regulation wasn't met, and second, as a basis for any types of false claims liability. The same with the integration argument. You've got undisputed evidence that the hospital outpatient clinic was, in fact, financially integrated both with respect to its staff, with respect to how it calculated facility fees, with respect to the access to records. And Mr. Zeman is teasing out his view of the regulation with really no support that there is a distinction between medical and billing records, and because the physicians billed it, and we didn't supposedly have access, although there's no real definitive evidence in the record on that, that that establishes a regulatory violation that would support labeling all of our facility claims as false. I don't want to get into Escobar, but we have been submitting claims for facility fees since 2009. The record shows that we were not in every single point he made. We rebutted, and he has no direct evidence other than his disagreement with that evidence and inferences that can be drawn, that we did not in good faith completely satisfy our understanding of that regulation. So facially, you don't have false claims, and then there is no evidence in the record at all with respect to any reckless disregard at a minimum, or any evidence that, you know, we were trying to manipulate the provider base status or cut corners in order to bill facility fees. That is just not the stuff of false claims. And I want to finish on one point on this, because it sort of goes back to the Coleman issue, but directly addresses, as you wish, Your Honor, the point you just made. At the end of the day, if you look at the third amended complaint that was the proposed third amended complaint, he ends up filing on behalf of Ms. Zeman a synopsis of what his belief in terms of false claims are with respect, based on the alleged violations of the provider base status. And he says that during discovery, Ms. Zeman uncovered what she believes to be more than one failure by defendant to meet all the criteria necessary to charge facility fees pursuant to 42 CFR 413.645. When plaintiff brought to defendant's attention, this to the totality of the circumstances, defendant was aware of or recklessly indifferent in terms of blah, blah, blah, meeting those criteria. That is not a false claim allegation. That is a naked assertion. That is Mr. Zeman's opinion based on his interpretation of the provider base status. But he has not supported that with any evidence sufficient to allow a false claims cause of action to go forward, whether as a matter of pleading or as a matter of summary judgment. I'm done. Anybody have anything further? Thank you. All right. Thank you very much. Mr. Zeman, you've got about 2 minutes and 45 seconds. Okay, Your Honor. I appreciate that. Under Rule 9, we meet the requirements of Rule 9. How? Well, we plead. You know, if he goes on, the plaintiff goes on for a page and a half in their supplemental response to Interrogatory Number 4, detailing more factual analysis than most in most complaints I've seen. So it gives plenty of, again, it gets back to the fair notice. They were on fair notice even under Rule 9. But there's an extra component when you have these false claim act cases, which is the statute requires that the first look at this be given to the plaintiff. So if you can bring these claims in through the back door, how is the government going to decide whether it's a claim it's going to adopt or not? Your Honor, in my reply brief, there are citations that say that the courts that have reached this issue have said that the amended complaints do not need to be filed under seal again. It's just it's the first, you only have to do it the first time. And the citations are in there. I don't think you're answering Judge Parker's question. I think as I understand his question, it's simply if the United States has to make a determination while the case is still under seal as to whether or not it's going to join the suit, how is it going to know whether or not there's a meritorious claim here if two and a half years down the road you provide through notice via a supplemental response that you now have this provider-based theory? If that was certainly not presented to the United States while the complaint was under seal, was it? Well, I submit to the Court that the United States government was on notice because every step of the way, because every bit of every service of every document has to be served upon the United States government. So everything that's before you... After the government decides or declines... Yes, yes, Your Honor. You serve them with a copy of your supplemental response to interrogatory number four? I think I did, Your Honor. So how's the government going to decide when they get these materials in the mail whether there's a new claim? Well, I assume that... You're saying they're going to have to rediscovery materials and try to divide from discovery responses whether this is in addition to a discovery response a new claim? How, Your Honor, would they know if we stipulated to it? If we stipulated to it and we... Well, at least that's a little bit more notice if there's a stipulation, but... What if it's an informal stipulation that we try? I mean, that's what the Federal Rules of Civil Procedure actually authorize. Rule eight says you can do that. You can implicitly try issues that aren't even stated in the complaint. If you both... If the defendant doesn't object during trial to the admission of these facts, then you're able to proceed. You're able to amend and go back later and amend your complaint. But I'd like to just get to one point, and that is because they talked about getting to the merits of this matter. On the merits of this case, there's something that defense counsel has not addressed at all, and that is the fact that our main claim has still been and has been is not this 413.65 issue. It's the issue of duplication of fees. That is what is at the heart of this matter. But isn't that intertwined with the facility fee? Because what you're saying is that USC had no right to bill for facility fees for what, in your view, amounts to nothing more than the same fees that were covered when the doctor was billing for professional services. No, Your Honor. Our theory is basically it's laid out in the chart one, and I ask you to ignore the middle part because the court has ruled that that's based on material not properly before the court, but the rest of the chart is. And that is simply that they're saying that the facility fee, and they admit this in the motion for summary judgment, they say in there that the charge, the facility fee, cannot contain any exception to the fact that it can't contain any fees for the doctor. It can only contain costs, and it's got to absorb all the costs. We admit that. But the facility fee was essentially overhead that the hospital incurs, which is greater than a clinic would incur because of the fact that the hospital operates 24-7 and it provides a panoply of specialized departments and services that the clinic doesn't provide. Correct, Your Honor, but that's not what happened here. What they did is... But isn't that what the facility fee is? Exactly. That's what the CEO says it was. Right, right, right. But, Your Honor, this is what they did, which is, it was clever, is that they billed the facility fee based upon the surgery. The doctor gets paid a global fee at that point. The global fee is for not only going in and doing the surgery, it's for the follow-up, and that's the key. 90 days after, you get free follow-up. It's not free. Don't the regulations also provide that the hospital can provide a separate bill for the facility fee, which is over and above the professional fee that the surgeon charges for his or her time? Only if the surgeon has no responsibility for the cost, for any cost. And here, the evidence shows that they still, that the doctor still was charging and collecting for the cost, for costs associated with his services. Can I interrupt you right there, please, because I want to give you an opportunity to respond to my question before we conference. And it just seems to me, if that's your theory, and I understand that to be your theory, then on the worst day, the physician may have billed too much. Why is it, why would the facility have billed too much under your theory? No, Your Honor, well, because they, in this instance, in the facts before this Court, is that USC owned the physicians, the doctors of USC as well, and so the facility owned the physicians as well. They're a wholly owned subsidiary. And plus, USC was paying the doctors directly from that. And under the case that I just recently brought to the Court's attention, Swobin, that USC has an affirmative obligation to make sure that their wholly owned subsidiary, the doctors of USC, aren't submitting false claims. All right. I understand your theory. Okay. Mr. Zeman, you're five minutes over, so thank you very much. The case just argued is submitted. We'll get you an answer as soon as we can, and we are adjourned. Thank you all very much. Thank you.
judges: Parker, Tallman, Christen